```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
WILLIAM BENZA,

                        Plaintiff,               05-CV-6228T

v.                                               **DECISION
                                                 and ORDER**

JO ANNE BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____
```

INTRODUCTION

Plaintiff, William Benza,("plaintiff" or "Benza"), filed this action pursuant to the Social Security Act, §§ 216(i) and 223(a), seeking review of a final decision by the Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits("DIB"). On November 14, 2005, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the plaintiff moved for judgment on the pleadings. On January 9, 2006, the Commissioner moved for judgment on the pleadings affirming her final decision that the plaintiff is not eligible for DIB.

For the reasons that follow, this Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, the defendant's motion for judgment on the pleadings is granted.

PROCEDURAL HISTORY

The plaintiff filed this application for DIB on June 11, 2003, alleging his disability since September 1, 2001, due to back, shoulder, and neck pain diagnosed as degenerative disc disease and

cervical spondylosis. (T. 20)[1]. The plaintiff met the insured status requirements through December 2005. (T. 65). The plaintiff's application for DIB was denied and on November 17, 2004, a hearing was held before Administrative Law Judge ("ALJ") James Bukes. (T. 275-302). On January 19, 2005, the ALJ considering the case *de novo* found that the plaintiff was not disabled because his impairments although severe did not meet one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. and that the plaintiff was able to perform a limited range of work at the light level of exertion. (T. 6-20). On April 14, 2005, the ALJ'S decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. Id. Thereafter, plaintiff filed this civil appeal.

## BACKGROUND

### A. Non-Medical Evidence

The plaintiff is a 55 year old man with a high school education and two years of college education. (T. 53, 77). He worked for Corning Glass Works, Inc. for 23 years as a forklift operator, quality control specialist, and laborer. (T. 72). He retired in August of 2000. Id.  After retirement, the plaintiff went to Texas in an attempt to enter into a rental car business with a friend. (T. 279). The plaintiff maintains that he could not

---

[1] All citations "T" refer to the Transcript of the Administrative Record submitted to the Court as part of defendant's Answer, which include, *inter alia*, plaintiff's medical records, a transcript of the hearing before the ALJ and copies of the ALJ's decision denying plaintiff DIB.

complete this work because of his pain. (T. 278). He has not worked since September 1, 2001. (T. 277).

The plaintiff has stated that he has constant pain in his neck, shoulder, and back which worsens with exertion and cold temperature. (T. 293-4). He also maintained that he suffered from mental difficulties of depression and panic attacks. (T. 291-295). He has claimed that he sleeps two to three hours per night and take naps during the day. (T. 293). Plaintiff has stated that he takes care of his personal needs, does household chores, shops for groceries by himself, prepares his own meals, attends church, goes to the movies, and walks to exercise. (T. 80, 83, 84).

During the plaintiff's hearing, the ALJ called David Festa, M.A. ("Festa") an impartial vocational expert to testify. (T. 49-2). Considering an individual with the plaintiff's vocational factors and residual functional capacity ("RFC") with light work limitations on neck movement and overhead reaching Festa concluded that the plaintiff could not perform his past relevant work but that he could work as an office helper or counter clerk. (T. 297-298). Furthermore, Festa testified that in the Southern Tier region, 190 office helper jobs and 1,230 counter clerk jobs existed. (T. 298).

B. <u>Medical and Chiropractic Evidence</u>

In April 1990, the plaintiff underwent an anterior cervical discectomy by Dr. David Kung. (T. 239).

In September 2001, the plaintiff saw Dr. Speak, D.O. following an August 2001 car accident. (T. 152). The doctor assessed strain/sprain in the cervical, thoracic, and lumbar spine and in the shoulders. He prescribed Darvocet. X-rays showed cervical spine hypolordosis, but no thoracic or lumbar spine abnormality. (T. 154).

The plaintiff received physical therapy from September 1, 2001 through October 27, 2001. (T 164-6).

On September 4, 2001, a cervical spine MRI showed mild degeneration and intervertebral disc degeneration, a sixth intervertebral disc bulge, and a C7-T1 protrusion. (T. 148-9).

On September 25, 2001, the plaintiff saw Dr. Boudreau, D.O. for neck, back, and shoulder pain. (T. 142-5). It was the doctor's opinion that the injuries were caused by the car accident and that they were permanent in nature. (T. 164-66).

On October 15, 2001, Dr. Speak found that the plaintiff had restriction on cervical spine motion, and equal and reactive deep tendon reflexes. (T. 138-9). The doctor noted disc herniation, cervical, thoracic and lumbar spine sprain/strain and he rated the plaintiff's prognosis as poor. (T. 139).

There was no record of any treatment in 2002. (T. 168).

In June of 2003, the plaintiff filed his claim for disability benefits. (T. 53-55).

In July of 2003, Dr. Panjwani performed a consultative examination. (T. 167-72). During the examination, the plaintiff

stated that he could lift fifteen to twenty pounds. (T. 168). The plaintiff's motor strength was grade 5/5, his sensory status was normal, and his straight leg raise was negative. Id. The plaintiff could touch his toes and squat with some discomfort, he could heel-toe walk without difficulty and his lumbar flexion/extension, lateral flexion and rotation were full. (T. 173). The plaintiff was not taking any medication. (T. 169).

In July 2003 and September 2003, X-rays showed spine disc degenerative changes. (T. 174, 183).

September 22, 2003 through November 19, 2003, the plaintiff was treated by Dr. Kartzman, a chiropractor. (T. 197-99). Dr. Kartzman felt that the plaintiff was totally disabled. (T. 199).

An October 2003 MRI showed disc protrusions but no cervical cord compromise. (T. 184).

On November 7, 2003, the plaintiff saw Dr. Kung. (T. 261). The doctor felt that the x-rays showed degenerative disc changes but no symptoms, signs or MRI findings of spinal cord or nerve root compression. Id. It was his impression that the plaintiff had cervical spondylosis. (T. 262).

In November of 2003, the plaintiff saw Dr. Forrest in connection with a Workers' Compensation claim. (T. 190-93). After an examination, the doctor felt that the plaintiff had a moderate to marked disability which would prevent him from having a job that

5

required above shoulder work or turning his head frequently. (T. 193).

On November 22, 2003, Dr. Kartzman, the plaintiff's chiropractor wrote that he felt that the plaintiff had been disabled since the first date he saw him. (T. 187). The doctor referred the plaintiff to a pain clinic which the plaintiff deferred. (T. 209).

On January 22, 2004, the plaintiff saw Dr. Phillips, his primary care physician. (T. 226). Dr. Phiilips prescribed Tylenol #3 for his pain. Id.

In February and March of 2004, the plaintiff complained of depression and anxiety for which Dr. Phillips prescribed Zyprexa. (T. 227-29).

In July 2004, Dr. Phillips examined the plaintiff again. (T. 257). He observed no sensory or motor deficits and symmetrical deep tendon reflexes. (T. 256). The doctor prescribed an anti-depressant, a sleep aide, and Norvasc. Id.

The plaintiff saw Dr. Veena Garyali, a psychiatrist, on September 10 and 22, October 14, and November 2, 2004. (T. 240-42). The doctor noted that the plaintiff's speech was coherent, there was no psychosis, and his memory was good. (T. 241). In addition, she noted that he appeared agitated, nervous, easily overwhelmed and had an obsessive quality to his thinking. (T. 241). Dr. Garyali assessed, *inter alia*, depression due to a medical condition on the DSM Axis I, and a global assessment of functioning ("GAF") of 70, which indicates some mild symptoms or some difficulty in social or

6

occupational functioning, but overall, the that individual is generally functioning pretty well. (T. 241).

On October 2004, Dr. Kartzman opined that the plaintiff could lift ten pounds and that he had limitations on neck movement and postural activities. (T. 236).

In November 2004, Dr. Garyali opined that the plaintiff had a good ability to comprehend and carry out simple instructions, respond appropriately to co-workers, exercise good judgment, and recognize and respond to stressors such as hazards in the workplace. (T. 251-54). Additionally, the doctor noted that the plaintiff had a fair ability to remember work procedures and detailed instructions, function independently, complete a normal workday on a sustained basis, follow occupational rules, make simple work-related decisions, maintain social functioning and tolerate customary work pressures in a setting involving production standards. But she opined that the plaintiff had a poor ability to concentrate and attend to tasks over an eight-hour work day. (T. 252-54). The doctor responded "yes" to the likelihood of deterioration under job stress. (T. 254).

On March 3, 2005, Dr. Garyali wrote a letter further explaining her assessment of the plaintiff's limitations. (T. 263). She assessed that the plaintiff's limitations "*might* last a period of twelve months." (T. 263). She based this opinion on the plaintiff's complaints of a 1989 work injury and of pain. Id.

LEGAL STANDARD

    A. Jurisdiction and Scope of Review

42 U.S.C. § 405(g), grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. When considering a claim, the Court must accept the findings of fact made by the Commissioner provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938).

Under this standard, the court's sole inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the law judge." Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).

    B. Legal Standards

Under the Social Security Act ("the Act"), disability insurance benefits may not be paid unless a claimant meets the insured status requirements of 42 U.S.C. § 423(c). In addition to establishing insured status, plaintiff must also demonstrate :

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less then 12 months...

42 U.S.C. § 423(d)(1)(A); see Barnhart v. Walton, 535 U.S. 212, 214 (2002).

Furthermore, the Act requires that an individual will be determined under a disability only if his physical or mental impairments are so severe that he is unable to do neither his previous work, nor when considering his age, education and previous work experience, any other work in the national economy. 42 U.S.C. § 423(d)(2)(A); Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002).

In evaluating disability claims, the Commissioner instructs adjudicators to follow the five step process promulgated in 20 C.F.R. § 416.920. First, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. Second, if the claimant is not so engaged, the Commissioner must determine whether the claimant has a "severe impairment" which significantly limits his ability to work. Third, if the claimant does suffer such an impairment, the Commissioner must determine whether it corresponds with one of the conditions presumed to be a disability by the Social Security Commission. If it does, then no further inquiry is made as to age, education or experience and the claimant is presumed to be disabled. If the impairment is not the equivalent of a condition on the list, the fourth inquiry is whether the claimant is nevertheless able to perform his past work. If he is not, the fifth and final inquiry is whether the claimant can perform any other work. The burden of proving the first four elements is on the claimant, while the burden of proving the fifth element is on the Commissioner. Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996).

9

DISCUSSION

Here, the ALJ properly followed the five step procedure. The ALJ found that the plaintiff: (1) had not engaged in substantial gainful employment at any time since his alleged disability onset date of September 1, 2001; (2) suffered from a history of degenerative disc disease and cervical spondylosis which constituted severe impairments; (3) did not have an impairment listed in Appendix 1 of the C.F.R, Part 404, Subpart P; and (4) could not perform any of his past relevant work, but could perform a limited range of work at the light level of exertion. Lastly, the ALJ proceeded to the fifth and final step of the sequential evaluation process by using medical-vocational rule 201.25 set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the grids") as a framework for decision-making and also relied on vocational expert testimony to find that there were a significant number of jobs in the national, state and local economy which the plaintiff could perform such as an office helper and a counter clerk.(T. 15-21)

The Commissioner contends that because there is substantial evidence in the record to support the ALJ's determination that the plaintiff is not disabled, her motion for judgment on the pleadings should be granted.

The plaintiff contends that although the ALJ followed the five step procedure, he improperly concluded that the plaintiff was not disabled because the claimed disability did not constitute a severe

10

impairment within the meaning of the Act. (T. 15-21). Specifically, the plaintiff argues that the ALJ erred when he: 1) improperly rejected the opinions of the treating sources; 2) arrived at an improper residual functional capacity; 3) improperly relied upon vocational testimony; and 4) made an improper credibility assessment. Therefore, the plaintiff argues that because the ALJ erred his claim should be remanded to the Commissioner for the calculation and payment of benefits or in the alternative, his claim to should be remanded requiring the ALJ to apply the proper legal standards in weighing the evidence.   This Court finds that there is substantial evidence in the record to support the ALJ's determination that the plaintiff is not disabled.

The ALJ did consider the opinion of the plaintiff's treating physician Dr. Garyali. However, an ALJ will give controlling weight to opinions from treating sources only if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with any other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2).

Here, it was reasonable for the ALJ to give little evidentiary weight to Dr. Garyali because her opinions that the plaintiff's ability to concentrate over an eight-hour work day was poor and that he would likely deteriorate under job stress were not consistent 1) with the doctor's findings that the plaintiff had a good ability to comprehend and carry out simple instructions, could respond appropriately to co-workers, could exercise good judgment,

11

and could recognize and respond to stressors such as hazards in the workplace and 2) with the doctor's GAF score of 70 which indicates some <u>mild</u> symptoms or <u>some</u> difficulty in social or occupational functioning, but overall, the individual is <u>generally functioning pretty well</u>.

(T. 241, 252-54). In addition, Dr. Garyali's psychiatric treatment of the plaintiff, which began in September of 2004, three years after the alleged onset of disability, consisted of only four visits over a three month period during which time the doctor failed to indicate that the plaintiff's condition had lasted or was expected to last for a continuous period of one year satisfying the duration requirement of the Social Security Act. (T. 17-18). <u>See</u> 42 U.S.C. §423(d)(1)(A)(disability has lasted or can be expected to last for a continuous period of not less then 12 months); <u>see</u> 20 C.F.R. § 404.1527(d)(2)(i) (length of treatment is a factor when considering the weight to attribute to a medical opinion). Only at the behest of the plaintiff's counsel did Dr. Garyali eventually provide a letter which indicated that the limitations she assessed "might" last a period of twelve months. (T. 263). Thus, it was reasonable for the ALJ to not accept Dr. Garyali's assessment to the extent that it reflected significant limitations.

<u>Weight to be Given to Chiropractor's Opinion</u>

Plaintiff relies upon the opinion of Dr. Kartzman, a chiropractor who is the only treating source that found him to be disabled. The ALJ, however, erred when he stated that the

12

chiropractor's opinion "is entitled to no weight." The regulations provide that "medical opinions are statements from physicians and psychologists and other acceptable medical sources that reflect judgments about the nature and severity of your impairments . . ." 20 CFR § 404.1527(a)(2). Section 404.1513(a) lists five categories of "acceptable medical sources," none of which mentions chiropractors. Thus, since the regulations do not classify chiropractors as either physicians or "other acceptable medical sources," chiropractors cannot provide medical opinions. See Diaz v. Shalala, 59 F.3d 307, (2d Cir. 1995). Although chiropractors cannot provide medical opinions ". . . the ALJ has the discretion to determine the appropriate weight to accord the chiropractor's opinion based on all the evidence before him; under no circumstances can the regulations be read to require the ALJ to give controlling weight to a chiropractor's opinion." Id. 314. Although the ALJ erred by holding that the chiropractor's opinion is "entitled to no weight," that conclusion does not warrant a reversal or a remand since none of his other treating physicians, Dr. Kung, Dr. Speak, and Dr. Boudreau, found the plaintiff to be disabled.

Weight to be Given to Vocational Expert Testimony

The ALJ reasonably concluded that the plaintiff's residual functional capacity ("RFC") was of a limited range of work at the light level of exertion. The ALJ noted that the plaintiff did not take medicine for his pain and had not required repeat surgery. The

plaintiff also admitted that he could lift 15 to 20 pounds. Moreover the plaintiff stated that he takes care of his personal needs, does household chores, shops for groceries by himself, prepares his own meals, attends church, goes to the movies, walks to exercise. The ALJ noted in his opinion that he relied upon <u>the record as a whole</u>, including medical evidence, as well as plaintiff's statements, and statements from other individuals to reach his decision. (<u>See</u>, T. 15-21). Therefore, the ALJ's decision and the evidence before the ALJ indicate that the RFC finding was supported by evidence that the plaintiff was capable of performing a limited range of work at the light level of exertion.

Contrary to the plaintiff's contention, it was reasonable for the ALJ to rely on the impartial vocational expert's conclusions that the plaintiff could perform the jobs of office helper and counter clerk, which existed in significant numbers in national, state and local economies. (T. 19-21) Vocational expert testimony that is based upon factors properly found by the ALJ constitutes substantial evidence to support the ALJ's decision. <u>Dumas v. Schweiker</u>, 712 F.2d 1545, 1553-54 (2d Cir. 1983). Here, after assessing the plaintiff's RFC with particular limitations, the ALJ relied upon the opinions of an impartial vocational expert to assist him in determining whether jobs exist in the economy for an individual of the plaintiff's age, education, work experience, and RFC. (T. 297). The vocational expert opined that work did exist for the plaintiff as a office helper or counter clerk in the local,

state, and national economy. Id. Thus, the ALJ reasonably concluded that the plaintiff was capable of making a successful adjustment to a position consistent with his medical profile that exists in significant numbers in the economy.

### Credibility Determination

As to determining plaintiff's credibility, it is well established that it is within the discretion of the ALJ to evaluate the credibility of the plaintiff's testimony and render an independent judgment in light of the medical and other evidence regarding the true extent of such symptomology. Mimms v. Secretary of Health and Human Services, 750 F.2d 180, 186 (2d Cir. 1984). Here, the ALJ found that the plaintiff's statements concerning his impairments and their impact on his ability to work are not credible in light of the following observations:
1) the plaintiff's own description of his daily activities; 2) the lack of ongoing physical therapy; 3) the lack of repeat surgery intervention; 4) the failure to participate in a pain management program; 5) a long period where no medications were needed; 6) the lack of medical treatment for the year 2002; and 7) the multiple discrepancies between the plaintiff's assertions and the actual clinical abnormalities reported in the medical evidence. Thus, the ALJ reasonably concluded that the objective evidence in the record did not substantiate the plaintiff's claim of disability to the extent he alleged.

Therefore, I find that the ALJ's conclusion is supported by substantial evidence in the record and that the record, read as a whole, presents sufficient evidence to support the conclusions reached by ALJ Bukes.

### CONCLUSION

For the reasons set forth above, I do find substantial evidence in the record to support the ALJ's conclusion that the plaintiff is not eligible for DIB. Accordingly, the Commissioner's motion for judgment on the pleadings is granted.

ALL OF THE ABOVE IS SO ORDERED.

          S/Michael A. Telesca
          _____
            MICHAEL A. TELESCA
          United States District Judge

DATED:  Rochester, New York
      May 24, 2006